Jeffrey C. Block, *pro hac vice to be filed*
Jacob A. Walker (SBN 271217)
**Block & Leviton LLP**
260 Franklin Street, Suite 1860
Boston, MA 02110
(617) 398-5600 phone
jeff@blockleviton.com
jake@blockleviton.com

*Attorneys for Plaintiff Jeffrey Toole*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFREY TOOLE, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>AFFIRM HOLDINGS, INC., and MAX LEVCHIN,<br><br>Defendants. | Case No.<br><br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br><br>Jury Trial Demanded |

Plaintiff Jeffrey Toole ("Plaintiff"), by and through his attorneys, alleges upon personal knowledge as to his own acts, and upon information and belief as to all other matters, based on the investigation conducted by and through his attorneys, which included among other things, a review of documents filed by Defendants (as defined below) with the United States Securities and Exchange Commission ("SEC"), news reports, press releases issued by Defendants, and other publicly available documents:

## NATURE AND SUMMARY OF THE ACTION

1.     This is a securities class action on behalf of all investors who purchased or otherwise acquired Affirm Holdings, Inc. ("Affirm" or the "Company") securities on February 10, 2022 after the Company sent a Tweet concerning its Second Quarter 2022 financial results at approximately 1:15 p.m. EST (the "Class Period"). This action is brought on behalf of the Class for violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t(a) and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. § 240.10b-5.

2.     Affirm purports to be a "next generation platform for digital and mobile-first commerce." Through its platform, the Company offers "buy now, pay later" or "BNPL" services to consumers. Affirm represents itself "a more flexible and transparent alternative to credit cards."

3.     At approximately 1:15 p.m. on February 10, 2022, Affirm issued a Tweet from its official account in which the Company disclosed certain metrics from its second quarter 2022 financial results. The Tweet, which was published prior to the Company's planned release of its financial results, portrayed a highly successful quarter, which included an increase in revenue of 77%. This caused Affirm's share price to spike nearly 10% in intra-day trading.

4.     The Tweet was materially misleading, in that it omitted to disclose the full details of Affirm's second quarter financial results.

5.     Indeed, the Company deleted the Tweet and released its full second quarter financial results ahead of schedule. The full financial results were lackluster – with the Company posting a loss of $0.57 per share, compared with analyst expectations of $0.37 per share.

6.     On this news, Affirm's share price plummeted from an intra-day high of $83.57 per share on February 10, 2022, to close at $58.68 per share, or approximately 32%.

## JURISDICTION AND VENUE

7.     The federal law claims asserted herein arise under §§ 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. § 240.10b-5.

8.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and § 27 of the Exchange Act, 15 U.S.C. § 78aa.

9.     This Court has jurisdiction over each Defendant named herein because each Defendant is an individual or corporation with sufficient minimum contacts with this District to render the exercise of jurisdiction by the District Court permissible under traditional notions of fair play and justice.

10.    Venue is proper in this District under § 27 of the Exchange Act, 15 U.S.C. § 78aa and 28 U.S.C. § 1391(b). Affirm is headquartered in this District, Defendants conduct business in this District, and many of Defendants' actions took place within this District.

11.    In connection with the acts, omissions, conduct, and other wrongs alleged herein, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

12.    Plaintiff acquired and held shares of Affirm at artificially inflated prices during the Class Period, and has been damaged by the revelation of the Company's material misrepresentations and omissions.

13.    Defendant Affirm is a Delaware corporation with principal executive offices located at 650 California Street, San Francisco, California 94108. Affirm's securities trade on the NASDAQ stock exchange under the ticker symbol "AFRM."

14.    Defendant Max Levchin ("Levchin" or the "Individual Defendant") has served as Affirm's Chief Executive Officer and Chairman of the Board of Directors at all relevant times.

15.     The Individual Defendant, because of his position at the Company, possessed the power and authority to control the content and form of the Company's annual reports, quarterly reports, press releases, investor presentations, and other materials provided to the SEC, securities analysts, money, and portfolio managers and investors, *i.e.*, the market. The Individual Defendant authorized the publication of the documents, presentations, and materials alleged herein to be misleading prior to its issuance and had the ability and opportunity to prevent the issuance of these false statements or to cause them to be corrected. Because of his position within the Company and access to material non-public information available to him but not to the public, the Individual Defendant knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public and that the positive representations being made were false and misleading. The Individual Defendant is liable for the false statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

16.     Affirm purports to be a "next generation platform for digital and mobile-first commerce." Through its platform, the Company offers "buy now, pay later" or "BNPL" services to consumers. Affirm represents itself "a more flexible and transparent alternative to credit cards."

17.     Affirm planned to announced its financial results for the second quarter of fiscal 2022 after the markets closed on February 10, 2022. That day, at approximately 1:15 p.m., however, Affirm's official Twitter account issued a Tweet containing some of the Company's second quarter 2022 financial results. The Tweet stated, "Another great quarter in the books [ ] as we accelerated our growth. Leveraging our superior technology & putting people first = increasing total # of transactions by 218%, active consumers by 150%, GMV by 115%, & revenue by 77%! Tune in today at 2pm PT . . ."

18.     The Tweet, which made it appear that Affirm had a highly successful quarter, caused Affirm's share price to jump roughly 10% in intra-day trading.

19.     Affirm deleted the Tweet, and released its full second quarter 2022 financial results ahead of schedule. The full financial results were far less impressive than investors were led to believe from the Tweet. For example, Affirm posted a quarterly loss of $0.57 per share – far worse than analyst expectations of $0.37 per share.

20.     Affirm's Tweet was materially false and misleading because it contained only selected metrics from the Company's second quarter 2022 financial results, which caused investors to believe that the Company had performed better than it actually did. The Tweet omitted material details, including that Affirm's quarterly loss was $0.57 per share, which was necessary in order to make the statement made not misleading.

21.     It was severely reckless for the Company and the Individual Defendant to allow the misleading Tweet to be sent during the market day.

22.     On news of the deleted-tweet and subsequent release of the full earnings, Affirm's share price plummeted $24.89 per share from an intra-day high of $83.57 per share to close at $58.68 per share on February 10, 2022, or approximately 32%.

23.     Affirm filed its full second quarter financial results for fiscal 2022 on Form 10-Q with the SEC on February 14, 2022. The Form 10-Q was signed by Defendant Levchin.

### CLASS ACTION ALLEGATIONS

24.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of a class of all persons and entities who purchased or otherwise acquired Affirm securities on February 10, 2022 after the Company's Tweet concerning its second quarter 2022 financial results at approximately 1:15 p.m. Excluded from the Class are Defendants, directors, and officer of the Company, as well as their families and affiliates.

25.     The members of the Class are so numerous that joinder of all members is impracticable. The disposition of their claims in a class action will provide substantial benefits to the parties and the Court. Throughout the Class Period, Affirm's shares actively traded on the NASDAQ stock exchange. Although the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class. Millions of Affirm's shares were publicly traded during the Class Period on the NASDAQ stock exchange. Record owners and other members of the Class may be identified from records maintained by Reata or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

26.     There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members include:

     a.   whether Defendants violated the Exchange Act;

     b.   whether Defendants omitted and/or misrepresented material facts;

     c.   whether Defendants' statements omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading

     d.   whether Defendants knew or recklessly disregarded that their statements were false and misleading

     e.   whether the price of the Company's securities was artificially inflated; and

     f.   the extent of damage sustained by Class members and the appropriate measure of damages.

27.     Plaintiff's claims are typical of those of other members of the Class because Plaintiff and the Class sustained damages from Defendants' wrongful conduct alleged herein.

28.     Plaintiff will adequately protect the interests of the Class and has retained counsel who are experienced in class action securities litigation. Plaintiff has no interests that conflict with those of the Class.

29.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## FRAUD ON THE MARKET

30.     Plaintiff will rely upon the presumption of reliance established by the fraud-on-the-market doctrine that, among other things:

     a.   Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

     b.   The omissions and misrepresentations were material;

     c.   The Company's securities traded in efficient markets;

d.   The misrepresentations alleged herein would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

e.   Plaintiff and other members of the class purchased the Company's securities between the time Defendants misrepresented or failed to disclose material facts and the time that the true facts were disclosed, without knowledge of the misrepresented or omitted facts.

31.   At all relevant times, the markets for the Company's securities were efficient for the following reasons, among others: (i) the Company filed periodic public reports with the SEC; and (ii) the Company regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the major news wire services and through other wide-ranging public disclosures such as communications with the financial press, securities analysts, and other similar reporting services. Plaintiff and the Class relied on the price of the Company's securities, which reflected all information in the market, including the market, including the misstatements by Defendants.

## NO SAFE HARBOR

32.   The statutory safe harbor provided for forward-looking statements under certain conditions does not apply to any of the allegedly false statements pleaded in this complaint. The specific statements pleaded herein were not identified as forward-looking statements when made.

33.   To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.

## LOSS CAUSATION

34.   After the Tweet was published, Affirm stock spiked by approximately 10%.

35.   Affirm's stock price then declined 32% from its intra-day high on February 10, 2022, after the Company deleted its misleading Tweet and published its full second quarter 2022 financial results.

36.   This revelation contradicted statements made by Defendants during the Class Period and were a causal element of the concurrent decline in the Company's share price.

## SCIENTER ALLEGATIONS

37.     As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.  As set forth elsewhere herein in detail, the Individual Defendant, by virtue of his receipt of information reflecting the true facts regarding Affirm, his control over, and/or receipt and/or modification of Affirm's allegedly materially misleading misstatements and/or his associations with the Company which made them privy to confidential proprietary information concerning Affirm, participated in the fraudulent scheme alleged herein.

### Count One
### Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder
### (Against All Defendants)

38.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

39.     During the Class Period, Defendant Affirm, and the Individual Defendant disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading.

40.     Defendant Affirm and the Individual Defendant violated § 10(b) of the Exchange Act and Rule 10b-5 in that they (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon those who purchased or otherwise acquired the Company's securities during the class period.

41.     Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for the Company's securities. Plaintiff and the

Class would not have purchased the Company's securities at the price paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by Defendants' misleading statements.

**Count Two**
**Violation of Section 20(a) of the Exchange Act**
**(Against the Individual Defendant)**

42.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

43.     The Individual Defendant acted as a controlling person of the Company within the meaning of § 20(a) of the Exchange Act as alleged herein. By virtue of his high-level positions at the Company, the Individual Defendant had the power and authority to cause or prevent the Company from engaging in the wrongful conduct complained of herein. The Individual Defendant was provided with or had unlimited access to the documents described above that contained statements alleged by Plaintiff to be false or misleading both prior to and immediately after their publication, and had the ability to prevent the issuance of those materials or to cause them to be corrected so as not to be misleading.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief and judgment as follows:

(a)     determining that this action is a proper class action pursuant to Rule 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of the Class as defined herein, and a certification of Plaintiff as class representative pursuant to Rule 23 of the Federal Rules of Civil Procedure and appointment of Plaintiff's counsel as Lead Counsel;

(b)     awarding compensatory and punitive damages in favor of Plaintiff and the other class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including pre-judgment and post-judgment interest thereon.

(c)     awarding Plaintiff and other members of the Class their costs and expenses in this litigation, including reasonable attorneys' fees and experts' fees and other costs and disbursements; and

(d)      awarding Plaintiff and the other Class members such other relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury in this action of all issues so triable.

February 28, 2022                              Respectfully submitted,

                                              /s/ Jacob A. Walker
                                              Jeffrey C. Block, *pro hac vice to be filed*
                                              Jacob A. Walker (SBN 271217)
                                              **Block & Leviton LLP**
                                              260 Franklin Street, Suite 1860
                                              Boston, MA 02110
                                              jeff@blockleviton.com
                                              jake@blockleviton.com

                                              *Counsel for Plaintiff*